# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ANNA BELLE SCOTT for** | ) | |
| **Ronnie W. Hicks, Jr., deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:08-00059** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **MICHAEL ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record pursuant to Sentence Four of 42 U.S.C. § 405(g).[1] Docket Entry No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry No. 15. Plaintiff has filed a Reply. Docket Entry No. 16. Plaintiff has also filed a Motion to Remand pursuant to Sentence Six of 42 U.S.C. § 405(g).

---

[1] As is noted in the style of the case, Plaintiff Ronnie W. Hicks, Jr., is deceased. As will be discussed in greater detail below, Mr. Hicks died in late May 2008, after the Appeals Council had issued its decision unfavorable to him. This action has been brought by Ms. Anna Belle Scott on behalf of deceased Plaintiff. For convenience, unless otherwise indicated, "Plaintiff" as used herein will refer to decedent Ronnie W. Hicks, Jr.

1

Docket Entry No. 17. Defendant has filed a Response, arguing that Plaintiff has failed to satisfy the requirements for a remand for the consideration of new and material evidence and that the decision of the Commissioner should be affirmed. Docket Entry No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record and Plaintiff's Motion for Remand both be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for a period of disability, DIB, and SSI on August 31, 2004,[2] alleging that he had been disabled since June 1, 2002,[3] due to degenerative disc disease, back pain, depression, and anxiety. Docket Entry No. 11, Attachment ("TR"), TR 23, 85-87, 103-105, 117. Plaintiff's applications were denied both initially (TR 52-53, 114-115) and upon reconsideration (TR 50-51, 112-113). Plaintiff subsequently requested (TR 48) and received (TR 36-41) a hearing. Plaintiff's hearing was conducted on December 7, 2006, by Administrative Law Judge ("ALJ") K. Dickson Grissom. TR 535-549. Plaintiff and vocational expert ("VE") JoAnn Bullard, appeared and testified. *Id.*

On March 28, 2007, the ALJ issued a decision unfavorable to Plaintiff, finding that

---

[2] Plaintiff's application for SSI benefits indicates that Plaintiff filed for SSI benefits on August 31, 2004. TR 103-105. Plaintiff's and Defendant's briefs also state that Plaintiff filed for SSI benefits on August 31, 2004. Docket Entry Nos. 14, 15. The ALJ stated in his opinion, however, that Plaintiff filed for SSI on August 30, 2004. TR 23. The documents for the initial determination and reconsideration regarding whether Plaintiff qualified for SSI benefits also noted that Plaintiff had filed his application on August 30, 2004. TR 112-115. Whether Plaintiff's application was filed on August 30, 2004 or August 31, 2004 is immaterial to the issues before the Court.

[3] Plaintiff amended the alleged onset date of disability at his hearing to November 6, 2004. TR 23, 220, 539-540.

2

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR

20-31. Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since November 6, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: adjustment disorder, degenerative disk disease in the lumbar spine, and cervical spine impairments (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of simple, unskilled light work activity lifting twenty pounds occasionally and ten pounds frequently, sitting for two hours in an eight-hour day, standing and/or walking for up to six hours in an eight-hour day; occasionally bending from the waist to the floor, occasionally climbing, stooping, crouching, and crawling; performing simple, repetitive and non-detailed tasks; where coworker and public contact no more than casual and infrequent [*sic*]; with direct and nonconfrontational supervision; involving infrequent and gradually introduced changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 12, 1970 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

3

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 6, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 25-31.

On April 25, 2007, Plaintiff timely filed a request for review of the hearing decision. TR 18. On May 14, 2008, the Appeals Council issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations, (TR 5-12), thereby rendering the decisions of the ALJ and the Appeals Council the final decision of the Commissioner.[4] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id*

## II. REVIEW OF THE RECORD

---

[4] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 12.

4

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985)

5

(citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze,* 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

6

"listed" impairments[5] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[5] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

7

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that: 1) the ALJ and the Appeals Council erred in failing to find Plaintiff disabled under the Listings; 2) the ALJ failed to give proper consideration and weight to the evidence from Plaintiff's treating mental health care providers; 3) the ALJ erred in discounting the credibility of Plaintiff's subjective complaints; and 4) the case should be remanded based upon new evidence that was not available at the hearing.  Docket Entry Nos. 14, 16, 17.  Accordingly, Plaintiff maintains that, pursuant to Sentence Four and Sentence Six of 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or, in the alternative, remanded.  *Id.*

Sentence Four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g).

Sentence Six of § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there

8

is good cause for the failure to incorporate such evidence into the
record in a prior proceeding;

*Id*.

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Listing 1.04A

Plaintiff argues that the ALJ and the Appeals Council erred in failing to find Plaintiff disabled under Listing 1.04A.[6] Docket Entry No. 14.

With regard to Listing 1.04A, "Disorders of the spine," the Code of Federal Regulations states in pertinent part as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test

---

[6] The Appeals Council found that Plaintiff had failed to meet the criteria of any musculoskeletal impairment under Listing 1.04. TR 9. Plaintiff argues only, however, that the Appeals Council erred in finding that Plaintiff had failed to meet or equal the criteria in Listing 1.04A. Docket Entry No. 14.

9

(sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A.

Plaintiff argues that he suffered from a lumbar condition that was the equivalent of Listing 1.04A, and therefore, that the ALJ erred in not addressing the applicability of the Listings to Plaintiff's back impairments. Docket Entry No. 14. Plaintiff further argues that the Appeals Council erred in its finding that Plaintiff's lumbar condition did not equal the level of severity described in Listing 1.04A.[7] *Id.*

Defendant responds that Plaintiff failed to carry his burden at step three of the sequential evaluation because the medical record did not contain sufficient findings to meet the criteria for disability under Listing 1.04A. Docket Entry No. 15. Defendant further responds that the Appeals Council correctly found that the medical evidence did not establish that Plaintiff met or equaled Listing 1.04A. *Id.*

While Plaintiff correctly asserts that the ALJ did not consider Plaintiff's back impairments under Listing 1.04A, this error was harmless because the Appeals Council, on Plaintiff's request for review of the ALJ's decision, compared the medical evidence of Record with the requirements of Listing 1.04 and found that Plaintiff's impairments did not meet or equal the level of severity described in the Listings. TR 9. Where the Appeal Council grants review and issues its own decision, the decision of the Appeals Council becomes the final decision of the Secretary and will be upheld if supported by substantial evidence even though

---

[7] Plaintiff argues on page 7 of his Brief that he equaled the criteria under Listing 12.04A, which relates to affective disorders, but he referenced the medical evidence that relates to Listing 1.04A. Docket Entry No. 14. Because Plaintiff cited evidence pertinent to Listing 1.04A and did not cite any evidence relating to the requisite criteria of 12.04A in this section, the undersigned assumes that Plaintiff must have intended to reference 1.04A instead of 12.04A.

10

substantial evidence may also have supported the contrary decision of the Administrative Law Judge. *Cornette v. Secretary of H.H.S.*, 869 F.2d 260, 263 (6th Cir. 1988); *Willbanks v. Secretary of H.H.S.*, 847 F.2d 301,303 (6th Cir. 1988); *Mullen v. Bowen*, 800 F.2d 535 (6th Cir. 1986)(en banc); *Beavers v. Secretary of H.E.W.*, 577 F.2d 383 (6th Cir. 1978). The Appeals Council properly supported their findings with substantial evidence.

As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the Appeals Council, and all of which constitute "substantial evidence." Additionally, the Appeals Council's decision demonstrates that it considered the testimony of both Plaintiff and the VE. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the Appeals Council's determination that Plaintiff's degenerative disc disease at the cervical and lumbar levels of the spine failed to meet the criteria described in section 1.04A. TR 9. After reviewing the Record, the Appeals Council determined that the evidence of Record did not document nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss. *Id.* The Appeals Council noted that Plaintiff's straight leg raising tests were consistently reported as negative. *Id.* The Appeals Council also noted that Plaintiff's symptoms responded well to prescribed medications and

11

epidural injections. TR 9, 376-384, 391. The Appeals Council further noted that Dr. Davis found that Plaintiff did not suffer from significant neurological deficits, that his gait and motor strength were normal, and that his sensation to pinprick was generally intact. TR 9, 416-417. Dr. Davis' findings were consistent with the findings at Carthage Family Healthcare, which documented that Plaintiff's symptoms did not demonstrate abnormalities in his gait, station, or sensation. TR 441-466, 490-495. Additionally, although Carthage Family Healthcare noted that Plaintiff suffered point tenderness upon palpation in his right to middle back, its records never documented abnormalities in Plaintiff's motion, stability, or strength. *Id.* After reviewing the medical evidence of Record, the Appeals Council found that Plaintiff failed to meet or medically equal the disabling level of severity described in Listing 1.04A. TR 9.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. The Appeals Council's decision was properly supported by "substantial evidence"; the Appeals Council's decision, therefore, must stand.

## 2. Assessment of Plaintiff's Mental Health Care Providers

Plaintiff argues that the ALJ failed to give proper consideration and weight to the evidence from Plaintiff's mental health care providers. Docket Entry No. 14.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to

12

the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

Plaintiff specifically argues that his psychological conditions imposed additional and significant work restrictions upon him. Docket Entry No. 14. Plaintiff argues that his mental health care providers assessed him as having significant mental health issues with global assessments of functioning ("GAF") ranging from 48-55, indicating that Plaintiff had moderate to severe restrictions during the relevant period. *Id*. Plaintiff additionally argues that the ALJ failed to adequately consider the medical evidence from Plaintiff's mental health care providers,

13

Plateau Mental Health Center ("Plateau"), because he failed to cite a medical finding noting Plaintiff's GAF at 48. Docket Entry No. 16.

Defendant responds that the ALJ properly considered and weighed the medical opinions of Record. Docket Entry No. 15. Defendant also responds that the ALJ's residual functional capacity ("RFC") finding is well supported by the actual limitations found by Plaintiff's providers. *Id.* Defendant argues that the reports cited by Plaintiff in his Brief are supportive of the mental limitations found in the ALJ's RFC determination. *Id.*

Although Plaintiff contends that the ALJ failed to give proper consideration and weight to the evidence from his treating mental health care providers, the ALJ simply did not do so. The ALJ, in his opinion, noted findings and treatment opinions from Plateau. Specifically, the ALJ stated the following:

> The claimant has also sought treatment for depression and anxiety beginning in November of 2004 (Exhibits 11F, 16F). The claimant cancelled appointments in December of 2004. In January and March of 2005, the claimant missed appointments. The claimant reported doing well on Paxil on April 13, 2005. He abused alcohol by self report until November of 2004. In July of 2005, he was calmer and had attended a ball game. He complained of a panic attack despite Xanax in July of 2005. In October of 2005, the claimant of sadness [*sic*], low energy, and inability to sleep at times. In August and September of 2005, he reported doing very well. On October 21, 2005 and in November of 2005, he reported that he was doing very well in regards to depression and just needed a refill (Exhibit 15F). On December 22, 2005, he indicated fixing cars as a hobby. He went without medications for two weeks in March of 2006 also. He reported spending more time on hobbies at that time. In July of 2006, he was "doing real well" until he ran out of medications for a couple of weeks. Global assessments of functioning were 50 to 55. Impairment in activities of daily living and concentration were reportedly moderate. Mild limitations were noted in social functioning and adaptation. On August 23, 2006, the claimant reported good sleep and good mood (Exhibit 20F). Global assessment of functioning was 60. On October 18, 2006, the claimant reported doing well despite cutting

> his antidepressant in half to stretch them [*sic*] out. On October 25,
> 2006, he reported that his medications were thrown away
> accidentally. He requested extra Xanax.
>                                  . . .
> Treatment notes indicate that his symptoms of anxiety and
> depression have responded to treatment.

TR 28-29. Exhibits 11F, 16F, and 20F, referred to above, are records from Plateau.

The ALJ's decision clearly demonstrates that he reviewed the medical records from Plateau before determining that Plaintiff's mental impairments did not reach a disabling level of severity under the "B" and "C" criteria of Listing 12.04. *Id.*

Plaintiff additionally argues that the ALJ erred by discussing Plaintiff's GAF scores of 50 to 60, but not Plaintiff's January 25, 2006 GAF score of 48. Docket Entry No. 16. While Plaintiff is correct that the ALJ did not discuss his GAF score of 48, Plaintiff fails to cite any Regulation requiring the ALJ to discuss every GAF score in his opinion. Plaintiff also fails to cite any Regulation that requires the ALJ to base his decision upon Plaintiff's lowest GAF score, rather than on a comprehensive review of the Record as a whole. Moreover, an ALJ's failure to mention a GAF score in the RFC does not render the RFC inaccurate because "a GAF score may be of considerable help to the ALJ in formulating the RFC, but it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). The ALJ found that Plaintiff's GAF scores ranging from 50-70, demonstrating mild to moderate symptoms, were consistent with the evidence of Record . TR 28-29; *See also* TR 287, 354, 356, 363, 368, 472, 474, 477, 483, 486, 488, 521, 523, 525. This determination was proper.

An ALJ has a duty to review all of the medical and testimonial evidence relevant to a claim. 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence,

15

disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). As discussed above, the ALJ properly discussed the medical records from Plaintiff's treatment at Plateau Mental Health Center before determining that Plaintiff was not disabled within the meaning of the Act and Regulations.

## 3. Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ erred in "dismissing" the credibility of Plaintiff's subjective complaints. Docket Entry No. 14. Plaintiff specifically contends that the ALJ discounted Plaintiff's credibility by citing "inconsistencies" in Plaintiff's statements, but that the ALJ's decision failed to specify any significant inconsistencies. *Id*. Plaintiff contends that the medical evidence failed to support the ALJ's finding of adequate pain control with medication. *Id*. Plaintiff further contends that the ALJ erred in rejecting Plaintiff's allegations of disabling pain because the objective evidence demonstrated the presence of significant physical impairments that could reasonably be expected to produce the alleged pain.

Defendant responds that the ALJ correctly evaluated Plaintiff's credibility because the ALJ considered the required factors in assessing Plaintiff's credibility and properly found that Plaintiff's subjective complaints were not credible to the extent alleged. Docket Entry No. 15. Defendant also responds that Plaintiff's reports to his medical sources and his hearing testimony contained discrepancies that eroded the credibility of his statements. *Id*. Additionally, Defendant responds that Plaintiff's allegations of disabling pain and his report regarding the duration of his daily walks were inconsistent with the evidence of Record. *Id*.

With regard to the credibility assessment of an individual's statements, Social Security Ruling No. 96-7p states in pertinent part:

      1. No symptom or combination of symptoms can be the

16

basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, *the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.*

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, *the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements* if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. *An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.*

5. It is not sufficient for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

. . .

17

S.S.R. No. 96-7p (1996) (emphasis added)

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g.*, *Walters v. Commr of Soc Sec,* 127 F.3d 525, 531 (6th Cir. 1997); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d 1224, 1227 (6th Cir. 1988); *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

While Plaintiff contends that the ALJ erroneously discounted the credibility of Plaintiff's subjective complaints without specifying any substantial inconsistencies between the evidence of Record and Plaintiff's testimony, the ALJ simply did not do so. Docket Entry No. 14. The ALJ expressly stated why he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms not entirely credible. TR 27. For example, the ALJ found that Plaintiff had made inconsistent statements about the cause of his pain, his alcohol abuse, and his daily activities. *Id*. The ALJ demonstrated the inconsistencies relating to the

18

cause of Plaintiff's back pain by noting that Plaintiff had reported back pain after motor vehicle accidents in 1992 and 2004, as well as after an altercation with the police in 1996. TR 27, 238-240, 249, 257, 291-304. The ALJ demonstrated an inconsistency relating to Plaintiff's alcohol abuse by noting that Plaintiff had denied any history of substance abuse to Dr. Blazina in November 2004, yet he later self-reported alcohol abuse until November 2004, he was involved in a motor vehicle accident in November 2004 where he was driving drunk, and he testified at his hearing that he had two convictions for DUI. TR 27-28, 287, 291-304, 367, 373, 542. The ALJ also noted inconsistencies in Plaintiff's reported daily activities because Plaintiff testified at his hearing that he had not worked on cars in more than four years, but, in December 2005, he claimed that he worked on cars. TR 27, 482, 544-545.[8] The ALJ found further inconsistencies between Plaintiff's claim that his grandmother performed all of the housework, and his November 2004 report to Dr. Blazina that he performed housework, such as making his bed, sweeping, doing laundry, and cooking for himself once or twice daily. TR 27, 226, 286. Additionally, the ALJ noted throughout his opinion that Plaintiff reported performing such activities as walking twice daily for thirty minutes, attending church, going out to eat, meeting with friends, seeing his girlfriend almost daily, and going to a ball game in July of 2005. TR 27-29, 286, 353, 520. The ALJ found that Plaintiff's alleged inactivity was inconsistent with his physical examinations, which documented that Plaintiff's symptoms failed to demonstrate abnormalities in his gait, station, or sensation. TR 27, 416-417, 441-465, 490-495. Because of the aforementioned inconsistencies, the ALJ concluded that Plaintiff's subjective complaints

---

[8] The ALJ stated that Plaintiff reported that he had not worked on cars in more than two years. TR 27. Plaintiff, however, testified at his hearing that he had not worked on cars in four years. TR 544.

were not fully credible. TR 27.

As has been demonstrated, the ALJ clearly articulated his reasons for not finding Plaintiff's subjective complaints to be fully credible. Plaintiff's argument that the ALJ erred in dismissing the credibility of Plaintiff's subjective complaints, therefore, fails.

Contrary to Plaintiff's assertion that the ALJ's finding that "treatment notes indicate[d] adequate pain control with medications" was not supported by the medical evidence, the ALJ actually noted evidence of Record that indicated that Plaintiff responded well to pain management and medication. Docket Entry No. 14. For example, the ALJ noted that, in April and May of 2005, Plaintiff reported "good results" from epidural injections. TR 28, 380. The ALJ further noted that, in June, July, and August of 2005, Plaintiff reported that medication had reduced his pain from a nine to a four and ten to a five (on a scale of one to ten). TR 28, 376, 377, 379. The ALJ also noted that Plaintiff had reported that his pain had worsened in March, June, and July of 2006, but that Plaintiff had claimed in October that his medications were still "working well." TR 28, 443-447, 492. Based on his review of Plaintiff's reported pain management, the ALJ concluded that the treatment notes indicated adequate pain control with medications. TR 27. This determination was within his province.

Although Plaintiff's contends that the ALJ erred in rejecting Plaintiff's allegations of disabling pain, the ALJ simply did not do so. Docket Entry No. 14. The ALJ determined that Plaintiff had a back condition that could be expected to cause some degree of pain, but that treatment notes indicated that his pain medication effectively lessened the pain. TR 29. The ALJ reviewed and documented Plaintiff's allegations of back pain and treatment history, as well as treatment notes evidencing adequate pain control with medication. *Id*. As noted above, the ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical

evidence against Plaintiff's subjective claims and reach a credibility determination. *See e.g.* *Walters*, 127 F.3d at 531 and *Kirk*, 667 F.2d at 538. The ALJ thoroughly evaluated and detailed the evidence of Record regarding Plaintiff's credibility; the ALJ's decision, therefore, must stand.

## 4. New and Material Evidence

Plaintiff Anna Belle Scott's separate "Motion to Remand" argues that Plaintiff's autopsy report revealed that Plaintiff died from an enlarged heart.[9] Docket Entry No. 17-1. Plaintiff Scott argues that this information constitutes new and material evidence that warrants that this case be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g). *Id.* Plaintiff Scott further argues that remand is appropriate in order to inquire into whether Plaintiff's hypertension and "ongoing pain" led to his death from an enlarged heart. *Id.*

Defendant responds that Plaintiff Scott has failed to demonstrate the materiality of the autopsy report because he did not show that Plaintiff's death from an enlarged heart would reasonably change the ALJ's decision. Docket Entry No. 18. Defendant also responds that, because the Record does not contain an actual diagnosis of hypertension, there is no reasonable probability that the revelation that Plaintiff died from an enlarged heart would change the ALJ's decision. *Id.* Additionally, Defendant responds that the autopsy report does not establish that Plaintiff's cardiac hypertrophy existed at the time of the ALJ's decision. *Id.*

Plaintiff died between the hours of 9:00 p.m. on May 29, 2008 and 10:40 a.m. on May 30, 2008. Docket Entry No. 17-1. Dr. Bruce Levy performed the autopsy on May 31, 2008. *Id.* Dr. Levy weighed Plaintiff's heart at 520 grams, leading him to conclude that Plaintiff died

---

[9] As has been mentioned, Plaintiff is now deceased. Ms. Anna Belle Scott brings this action on behalf of the deceased Plaintiff.

naturally of cardiac hypertrophy (an enlarged heart). *Id*. Plaintiff's attorney filed a Motion to Remand on December 3, 2008, arguing that the Record indicated Plaintiff had an ongoing problem with hypertension existing prior to his date last insured. *Id*. Defendant filed a Response to Plaintiff's Motion to Remand on December 17, 2008, arguing that Plaintiff Scott failed to show that the autopsy report was new and material evidence. Docket Entry No. 18.

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff has demonstrated that the evidence is new and that there is good cause for the failure to incorporate the autopsy report into the prior hearing, but Plaintiff has failed to demonstrate that the new evidence is material.

Plaintiff's autopsy report constitutes "new" evidence because it was not possible to obtain his autopsy report while he was still alive. For the same reason, Plaintiff could not have submitted the autopsy report to the ALJ during the hearing. There is no evidence in the Record regarding Plaintiff's cardiac hypertrophy.

Although the autopsy report is "new," and Plaintiff Scott has demonstrated "good cause" for failing to present it to the ALJ during the hearing, Plaintiff Scott cannot establish that the autopsy report revealing cardiac hypertrophy is material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Plaintiff has failed to satisfy this burden because Plaintiff, in his applications for SSI and DIB, never alleged disability due to

hypertension or cardiac hypertrophy. Although the Record contains medical diagnoses and documentation of Plaintiff's hypertension (TR 335-338, 441-470, 490-495) and Plaintiff reported taking Altace daily to treat his hypertension (TR 222, 505, 507), Plaintiff never alleged that his hypertension in any way affected his daily activities or caused him any disability. As noted above, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In the case at bar, Plaintiff failed to claim that he was unable to work or that he was unable to perform activities of daily living because of his heart condition.

Because Plaintiff did not allege, and the Record does not demonstrate, any functional limitation caused by Plaintiff's hypertension, there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if the autopsy report had been part of the Record before the ALJ.

Accordingly, Plaintiff Scott has failed to demonstrate that the new medical evidence was material, and remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record and Motion for Remand be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections. Failure to file specific

objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

E. CLIFTON KNOWLES
United States Magistrate Judge

Case 2:08-cv-00059   Document 19   Filed 07/13/09   Page 24 of 24 PageID #: 105